## THE DIAMOND S.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 126.

1. **Collision ⇐⇒105—Tug sunk in collision held not to have sustained burden by fair preponderance of credible evidence.**

Tug sunk in collision with other tug, when attempting starboard to starboard passage, *held* not to have sustained burden by fair preponderance of credible evidence.

2. **Collision ⇐⇒149—Libel for collision will be dismissed on failure of libelant to sustain burden of proof.**

Libel for collision will be dismissed, where libelant has not sustained the burden of proof by fair preponderance of credible evidence.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the O'Brien Bros. Towing Company against the steam tug Diamond S., her engines, etc.; the William Spencer & Son Corporation, claimant. From a decree for libelant, claimant appeals. Reversed.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers, of New York City, of counsel), for appellant.

Foley & Martin and William J. Martin, all of New York City, for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge. We find no question of law in the record, and after examining that document we are unable to view the facts as did the lower court.

This collision occurred in the North River during the late afternoon of a clear day, with an ebb tide and wind of insufficient strength to interfere with navigation. Shortly before collision, there were in the river at the same time and within signaling dis-

tance of each other the following vessels: The libelant's tug O'Brien, light, and bound from Gansevoort street, Manhattan, to the Wallabout. Of her it is most positively asserted by her navigator that she left the pier, and went out to the *middle of the river*, and then straightened out on her course downstream. Also the claimant's tug Diamond S., which had come in from the East River bound for Seventeenth street, Hoboken, a spot considerably lower down the river than Gansevoort street. Her navigator declared that his course was upstream and about 600 feet from the Manhattan pier line. Next the tug Madison, with a car float on her port side, bound from the Hoboken float bridge to Pier 41, Leroy street, Manhattan, a point more than a dozen blocks below Gansevoort street and nearly opposite the Hoboken float bridge. Lastly the West Shore ferryboat Weehawken, bound up the river to her New Jersey slip, about opposite Forty-Ninth street, Manhattan.

There is no doubt that, after certain exchanges of signals between these vessels, or some of them, a collision ensued between O'Brien and Diamond S., at a place off a point on the Manhattan shore somewhere between Piers 36 and 38. It does not seem to us important to fix this place more exactly, but it is most important that both sides agree that contact occurred not over 600 feet from the Manhattan pier line. In other words, in order to get into collision, the O'Brien had, according to her own story, come in from the middle of the river, and·by both stories the Diamond S. was hit in the path which her own witnesses declare had been her course on entering the North River. Finally it is agreed that Diamond S. hit O'Brien on the starboard side, about 10 feet abaft the stem, and so injured the O'Brien that she sank. The angle of collision does not accurately appear, but was quite wide.

The O'Brien, starting from Gansevoort street, could and did look downstream on the other vessels. She blew two whistles to Madison, received an assenting answer, "starboarded a little, * * * just a couple of spokes," and passed the bows of the Madison and her float. At this time, says O'Brien's navigator, he saw Diamond S. and Weehawken coming up the river, with the ferryboat astern of the tug.

Down to this point there is no serious conflict between the stories of the two tugs, but O'Brien's mate (who was in charge) next asserts that the Weehawken was nearer the New York shore than the Diamond S.; that

the tug was "headed to New Jersey," and was on O'Brien's starboard side. In this position of vessels, and when O'Brien was off Pier 39, the Weehawken blew him (O'Brien) two whistles, to which he replied with two and starboarded his wheel a little more; whereupon Diamond S. "straightened up and headed right for New York," and ran into collision with O'Brien at the place above set forth. According to this story, Diamond S. gave no signal, except a "toot," just before contact. Why this "toot" no one explains. The violent change of course on Diamond's part was made when the vessels were about 30 feet apart, whereupon O'Brien reversed at full speed before contact.

This story is not attractive. O'Brien's speed does not appear, but she started from over 500 yards out in the river, and got within less than 600 feet of the Manhattan shore, in order to get into collision, and did it without descending the river more than about 500 feet. This is more than unlikely; also the maneuver ascribed to Diamond S. is a strain on credulity. To swing across the ebb tide certainly 6 and perhaps 8 points, while moving no more than 30 feet, is a stiff story, and we do not believe it.

We accept in the main the evidence from claimant's tug, viz. that the O'Brien was coming in from the middle of the river, and when the tugs saw each other they were substantially head and head, as O'Brien's mate testified before the local inspectors. The "toot" was a signal of one blast, demanding a port to port passage. We think the court below was misled by the evidence as to whistles blown by the Weehawken. It was an unnatural thing for the O'Brien to blow two whistles to the Weehawken, when the latter vessel was astern of the Diamond S.; but by his own statement he did it. The Weehawken blew two whistles to the Diamond S. for leave to overtake and pass, and claimant's tug assented by whistle. The testimony about these whistles certainly misled the court below, who thought that a starboard to starboard passage was agreed on. This is not the evidence; no one from O'Brien asserted that that tug ever blew two whistles to Diamond S.

[1, 2] We believe that it was true, as stated by both navigators before the inspectors, that the meeting was substantially head and head, the natural passing was port to port, and O'Brien sheered across the bow of the other tug. Even were we not persuaded of this, it is clear that O'Brien has not sustained

9 F.(2d)—56

her case by a fair preponderance of credible testimony; wherefore her libel ought to have been dismissed. The Minnie, 225 F. 36, 140 C. C. A. 362.

Decree reversed, with costs.